**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DONALD M. PITRE, | |
| Plaintiff, | |
| v. | Case No. 14 CV 1958 |
| TELE-FLEX MEDICAL INCORPORATED, MICHAEL DIGUISEPPE, SAM GAROD, GARY GOOLIE, AARON W. TUTWILER, and JAY WHITE, individually, | |
| Defendants. | Jury Trial Demanded |

## COMPLAINT

Plaintiff, DONALD M. PITRE, by and through his attorneys, brings this complaint against Defendants, TELE-FLEX MEDICAL INCORPORATED, MICHAEL DIGUISEPPE, SAM GAROD, GARY GOOLIE, AARON W. TUTWILER, and JAY WHITE, individually, states as follows:

## INTRODUCTION

1.     Plaintiff brings this action to redress acts of race discrimination and harassment pursuant to Title VII of the Civil Rights Act of 1964 (Count I); for racial discrimination and harassment in violation of 42 U.S.C. § 1981 (Count II); for retaliation in violation of Title VII of the Civil Rights Act of 1964 (Count III); and for retaliation in violation of 42 U.S.C. § 1981 (Count IV).

2.     Defendants engaged in a continuing violation.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over Count I pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and 28 U.S.C. §1331; over Count II pursuant to 42 U.S.C. § 1981 and 28 U.S.C. §1343; over Count III pursuant to pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and 28 U.S.C. §1331; over Count IV pursuant to pursuant to 42 U.S.C. § 1981 and 28 U.S.C. §1343.

4.      Venue is proper in this judicial district under 28 U.S.C. §1391(b) and (c) because Defendant TELE-FLEX resides within this judicial district.

## ADMINISTRATIVE PROCEDURE

5.      On or about May 18, 2012, Plaintiff completed *pro se* a Charge Questionnaire with the Equal Employment Opportunity Commission ("EEOC").

6.      The EEOC filed a *pro se* Charge of Discrimination on Plaintiff's behalf on or about July 23, 2012.

7.      Plaintiff's filed an amended EEOC charge on or about October 9, 2013.

8.      On or about December 23, 2013, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

## PARTIES

9.      Plaintiff DONALD M. PITRE ("PITRE") is a black male.

10.     At all relevant times, until his termination in May 2012, Plaintiff was employed with TELE-FLEX MEDICAL INCORPORATED ("Tele-Flex").

11. Defendant Tele-Flex is a business engaged in the sale of surgical and medical equipment. Tele-Flex is incorporated within this state and at all relevant times to this Complaint employed Plaintiff.

12. At all relevant times, Defendant Tele-Flex has been continuously engaged in an industry affecting commerce, employs more than 15 employees, and is an employer within the meaning of Sections 701(b) and (h) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*

13. Defendant Tele-Flex has employed over 500 employees during the relevant time frame.

14. Defendant JAY WHITE ("White") is a white employee at Tele-Flex. At all relevant times Defendant White served as the President of Tele-Flex. White is sued in his individual capacity. At all relevant times, Defendant White was acting within the scope of his employment.

15. Defendant MICHAEL DIGUISEPPE ("Diguiseppe") is a white employee at Tele-Flex. At all relevant times Defendant Diguiseppe served as the Director of Sales of Tele-Flex. Diguiseppe is sued in his individual capacity. At all relevant times, Defendant Diguiseppe was acting within the scope of his employment.

16. Defendant SAM GAROD ("Garod") is a white employee at Tele-Flex. At all relevant times Defendant Garod served as the Human Resource Manager of Tele-Flex. Garod is sued in his individual capacity. At all relevant times, Defendant Garod was acting within the scope of his employment.

3

17.     Defendant AARON W. TUTWILER ("Tutwiler") is a white employee at Tele-Flex. At all relevant times Defendant Tutwiler served as the Regional Sales Manager, Southwest, of Tele-Flex. Tutwiler is sued in his individual capacity. At all relevant times, Defendant Tutwiler was acting within the scope of his employment.

18.     Defendant GARY GOOLIE ("Goolie") is a white employee at Tele-Flex. At all relevant times Defendant Goolie served as the Great Lakes Regional Manager of Tele-Flex. Goolie is sued in his individual capacity. At all relevant times, Defendant Goolie was acting within the scope of his employment.

19.     Each Defendant knew that it was illegal to discriminate against employees based on their race.

20.     Each Defendant knew that it was illegal to retaliate against employees because they complained about discrimination.

### FACTS UPON WHICH CLAIMS ARE BASED

21.     Defendant Tele-Flex hired Pitre in June 2009.

22.     At all relevant times, Plaintiff fulfilled his assigned duties satisfactorily.

23.     Plaintiff was assigned to the Dallas, Texas region for Tele-Flex.

24.     When Plaintiff was first hired, his manager was Hunter Hannon.

25.     On or about October 3, 2011, Plaintiff spoke with Hannon about interviewing for the Strategic Account Mangers Position, which would have been a promotion. Hannon denied Plaintiff an opportunity to interview for the position based upon his race.  Rather, the position was filled by a less-qualified, white male.

26.     Additionally, Hannon shared racially derogatory text messages with Plaintiff's co-workers and others. These text messages referred to Blacks as "Niggers." When Plaintiff discovered this behavior, he reported it to Human Resources.

27.     Shortly after complaining to Human Resources about the text messages Hannon was sending, Plaintiff began to be treated differently and less favorably than other Tele-Flex employees.

28.     In or around February 2012, Hannon left the company and was replaced by Defendant Tutwiler. Tutwiler was friends with Hannon and immediately began to harass Plaintiff and discriminate against Plaintiff based upon Plaintiff's race and in retaliation for his prior complaints.

29.     Specifically, Defendant Tutwiler singled out Plaintiff for criticism, put Plaintiff on a performance plan, treated Plaintiff differently than other similarly situated white employees and subjected Plaintiff to adverse employment actions.

30.     In or around February 2012, Defendants took large portions of Plaintiff's sales territory and forced Plaintiff to share the territory with Jake Miller, a white sales representative with little experience in the Dallas area.

31.     In addition to forcing Plaintiff to share his territory, Defendants also required Plaintiff to carry Jake Miller's sales quota. In other words, Plaintiff had to meet both his own quota and Jake Miller's quota, while sharing the territory and any potential profits with Miller.

32. On or about March 12, 2012, Plaintiff applied for a position as the Southwest Regional Sales manager.

33. Defendants did not promote Plaintiff to the Southwest Regional Sales manager position because of his race.

34. Shortly after Plaintiff was denied the Regional Sales Manager position, a coworker informed Plaintiff that he had overheard a conversation where management discussed their intent to "manage [Plaintiff] out of the company." This comment was made shortly after Plaintiff had made a formal complaint to human resources about the racial discrimination and harassment he was experiencing.

35. Defendants White, Diguiseppe, and Garod made and participated in promotional decisions that were discriminatory and retaliatory against Plaintiff.

36. In or around May 2012, Defendant Tutwiler referred to Plaintiff as "boy," along with other derogatory words that were racially offensive. Plaintiff again reported this conduct to Defendant Tele-Flex. After Plaintiff complained, Defendant Tutwiler falsely accused Plaintiff of threatening him.

37. Defendant Tutwiler also wrongfully accused Plaintiff of falsifying expense reports.

38. Defendant Tutwiler also began singling out Plaintiff's work performance, despite satisfactory work reviews. In fact, Plaintiff was the only person working under Defendant Tutwiler who was required to send out a work calendar, displaying Plaintiff's schedule and availability.

39.     Despite Plaintiff's satisfactory work performance, Defendant Tutwiler scheduled conference calls with Plaintiff as well as performance review sessions.  Other, non-minority sales representatives working under Defendant Tutwiler were not similarly required to attend such meetings.

40.     Plaintiff was regularly assigned menial tasks that were not required of other sales representatives.

41.     Plaintiff's pay was docked for taking paid time off and Plaintiff was falsely accused of taking more vacation days than Plaintiff was entitled to take.

42.     In or about July 2012, Plaintiff again complained to Defendant Garod about the ongoing harassment and discrimination and retaliation he was experiencing.

43.     On or around August 6, 2012, Defendant Garod met with Plaintiff to offer Plaintiff a resignation package after Plaintiff had made multiple complaints about the racial harassment, discrimination, and retaliation he was experiencing.

44.     Defendant Garod told Pitre that if he rejected the resignation package, he would be placed on a performance improvement plan based upon "behavioral issues."

45.     Defendants offered Pitre this resignation package to silence Plaintiff's complaints about the hostile work environment, racial harassment, discrimination, and retaliation that Plaintiff was experiencing.

46.     In or around August 2012, after Plaintiff filed a complaint with the EEOC, the harassment and discrimination Plaintiff had been experiencing again escalated.

47.     For example, Defendant Tutwiler constantly harassed Pitre via email, asking for unnecessary details about Plaintiff's work day. Defendant Tutwiler also accused Plaintiff of not returning company product from a customer when in fact Plaintiff's original manager, Hunter Hannon, had specifically instructed Plaintiff to send the contested product to an unhappy customer to save the relationship.

48.     Plaintiff was purposely locked out of emails that needed Plaintiff's response and then Plaintiff was subsequently blamed for being insubordinate. When Plaintiff contacted Defendant Tele-Flex's technical department, Plaintiff was told that Plaintiff had been aligned with the wrong division. Plaintiff did not encounter email lockouts until after Plaintiff complained about the racial harassment and discrimination he was experiencing.

49.     Defendants subjected Plaintiff to racial discrimination and harassment by, including but not limited to the following: subjecting him to differential treatment; subjecting him to disparity in pay and bonuses; denying him promotions and other positions; subjecting him to unwarranted criticisms of his performance; falsifying customer complaints against him; moving him from his assigned territory; and subjecting him to disciplinary actions and ultimately terminating his employment.

50.     Defendants retaliated against Plaintiff by including but not limited to the following: subjecting him to differential treatment; subjecting him to disparity in pay and bonuses; denying him promotions and other positions; subjecting him to unwarranted criticisms of his performance; falsifying customer complaints against him;

moving him from his assigned territory; subjecting him to disciplinary actions; and ultimately terminating his employment.

51.     Defendants Tele-Flex, White, Diguiseppe, Garod, and Tutwiler knew about the harassment, discrimination, and retaliation against Plaintiff and failed to take any effective remedial action to remedy the unlawful conduct.

52.     On or about February 1, 2013, Defendants Diguiseppe and Garod met with Pitre and told him that he was being reassigned to Gary Goolie, Great Lakes Regional Manager, out of Cincinnati, Ohio.

53.     Defendant Goolie continued the other Defendants' pattern of harassment, discrimination, and retaliation against Plaintiff by including but not limited to the following: subjecting Plaintiff to unwarranted criticisms; trying to force Plaintiff to resign by making the harassment, discrimination and retaliation almost unbearable; falsely reporting events to try to create a "paper trail" on Plaintiff to get him fired; attempting to set Plaintiff up for disciplinary action; refusing to remedy Plaintiff's complaints of discrimination and retaliation; and participating in the unlawful conduct.

54.     On May 6, 2013, Defendant Goolie told Plaintiff that his employment with Tele-Flex was terminated, effective immediately.

55.     Defendants did not terminate any non-minority employees for similar and/or more egregious alleged violations.

56. Defendants have engaged in harassment and perpetuated a hostile work environment against African American, Black, and minority employees because of their race and other protected status.

57. Defendants have engaged in a pattern and practice of discrimination against African American, Black, and minority employees because of their race and other protected status.

58. Defendants did not treat similarly situated White employees in the same manner as Plaintiff and other African American employees.

59. Defendants have engaged in a pattern and practice of retaliation against employees who have complained about discrimination and engaged in other protected activity.

60. Defendants and Defendants' supervisors had knowledge of the complained of conduct and refused or failed to take action to terminate or correct such conduct, although they had the power and authority to do so.

## COUNT I

**Title VII – Race Discrimination**

**Against Defendant Tele-Flex**

61. Plaintiff restates and realleges by reference paragraphs 1 through 60 as if fully set forth herein as against Defendant Tele-Flex.

62.     Defendants' conduct as alleged at length herein constitutes discrimination based upon Plaintiff's race, in violation of Title VII. The basis for Defendants' decision to demote and to ultimately terminate Plaintiff was based upon pretext to hide Defendants' discriminatory animus.

63.     The actions of Defendant Tele-Flex, as perpetrated by its agents and as described and complained of above, are unlawful employment practices in that they likely have the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff because of his race, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e), *et seq*.

64.     Defendant Tele-Flex is an "employer" within the meaning of Title VII and is subject to the requirements of the Title VII statute.

65.     Plaintiff is an "employee" within the meaning of Title VII.

66.     Plaintiff has performed all conditions precedent to filing this case under Title VII.

67.     Plaintiff is an African American male, and is a member of a protected category pursuant to Title VII.

68.     At all times, Plaintiff performed his job adequately, as indicated by his performance reviews.

69.     Plaintiff was subjected to numerous adverse employment actions based upon his race by Defendants in violation of the statute.

70.     Defendant Tele-Flex, as an employer, should not discriminate against its employees because of their race or allow them to be subjected to harassment based on their race.

71.     Defendant Tele-Flex knows that employment decisions cannot be made on the basis of an employee's race and that employees cannot be subjected to harassment based on their race.

72.     Defendant Tele-Flex knows that it has an obligation to ensure that employees are not subjected to harassment based on the fact that an employee has complained about unlawful conduct, discrimination, and/or harassment.

73.     Defendant Tele-Flex, as an employer, should have a policy against discrimination and harassment.

74.     Defendant Tele-Flex violated that policy by discriminating against Plaintiff based on his race as described herein.

75.     Defendant Tele-Flex's actions as alleged herein constitute a continuing violation.

76.     As set forth above, Defendant subjected Plaintiff to unequal and discriminatory treatment and by creating a hostile and abusive work environment that altered the conditions of Plaintiff's employment and by knowingly failing and refusing to protect Plaintiff from those the harassment based upon his race.

77.     The actions of Defendants have caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE**, Plaintiff seeks the following relief as to Count I of the Complaint:

A.      All wages and benefits Plaintiff would have received but for the discrimination, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

B.      Compensatory damages in an amount to be determined at trial;

C.      Defendant be required to pay prejudgment interest to Plaintiff on these damages;

D.      A permanent injunction enjoining the Defendant from engaging in the discriminatory practices complained of herein;

E.      A permanent injunction requiring the Defendant to adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000e *et seq.*;

F.      The Court retain jurisdiction of this case until such time as it is assured that the Defendant have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G.      Punitive damages as allowed by law as against Defendants;

H.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

I.      Such other relief as the Court may deem just or equitable.

## COUNT II

**(§ 1981 – Race Discrimination and Harassment/Hostile Work Environment)**

**Against All Defendants**

78.     Plaintiff restates and realleges by reference paragraphs 1 through 60 as if fully set forth herein against all Defendants.

79.     Defendants violated 42 U.S.C. § 1981 by intentionally subjecting Plaintiff to unequal and discriminatory treatment through false allegations, discipline, termination and other adverse actions and unequal treatment in the terms and conditions of his employment.

80.     Defendants' actions reflect a policy, custom or pattern of official conduct of engaging in and condoning discrimination against individuals based on their race.

81.     All Defendants' employment practices as alleged herein are undertaken with discriminatory intent.

82.     Defendant Tele-Flex is responsible for the acts of its supervisors and employees, who were acting within the scope of their employment and pursuant to a policy, custom, and/or pattern of race discrimination.

83.     The individual Defendants were acting within the scope of their employment when they harassed and discriminated against Plaintiff.

84.     Defendants intentionally discriminated against Plaintiff with malice or reckless indifference to Plaintiff's civil rights, thereby entitling Plaintiff to punitive damages against Defendants.

14

85. Defendants were aware that they should not discriminate against employees because of their race or perpetuate, condone or allow race discrimination or a hostile work environment based upon race.

86. Defendants have an obligation to ensure that employees are not discriminated against based on their race.

87. Defendants know that employment decisions cannot be made on the basis of an employee's race.

88. Defendants know that they have an obligation to ensure that employees are not subjected to a hostile work environment based on their race.

89. Defendant Tele-Flex, as an employer, should have a policy against discrimination and harassment.

90. Defendants violated that policy by discriminating against Plaintiff based on his race and creating a hostile work environment as described herein.

91. The conduct alleged herein constitutes a pattern, custom, and practice of discrimination against Blacks based on their race. This conduct constitutes an official policy or custom of Defendants, which has adversely affected Plaintiff and violated his rights to make and enforce contracts and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationships, under 42 U.S.C. § 1981.

92. The actions of the Defendants have caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE,** Plaintiff seeks the following relief as to Count II of the Complaint:

A.      All wages and benefits Plaintiff would have received but for the discrimination, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

B.      Compensatory damages in an amount to be determined at trial;

C.      A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

D.      A permanent injunction requiring that the Defendants adopt employment practices and policies in accord and conformity with the requirements of the Civil Rights Act of 1871, 42 U.S.C. § 1981, and further requiring that Defendants adopt and initiate effective remedial actions to ensure equal treatment based on race;

E.      The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F.      Punitive damages as allowed by law as against Defendants;

G.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.      Such other relief as the Court may deem just or equitable.

## COUNT III

### Title VII – Retaliation

### Against Defendant Tele-Flex

93.      Plaintiff restates and realleges by reference paragraphs 1 through 60 as if fully set forth herein as against Defendant Tele-Flex.

94.     Defendant subjected Plaintiff to unequal and discriminatory treatment by retaliating against him for complaining about the harassment and racial discrimination he experienced.

95.     Defendant Tele-Flex also discriminated against Plaintiff by refusing and failing to protect Plaintiff from retaliation by its management and supervisors.

96.     These adverse actions were proximately caused by Plaintiff's attempts to report and remedy the racial harassment and discrimination he was subjected to on a regular basis by Defendants.

97.     The actions of Defendant Tele-Flex, as perpetrated by its agents, including the individual Defendants named herein, and as described and complained of above, are unlawful employment practices in that they likely have the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff in retaliation for his actions in opposing unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e), *et seq.*

98.     Defendants intentionally subjected Plaintiff to retaliation by, among other things, exposing Plaintiff to a hostile work environment, harassment, unwarranted criticism and discipline, denial of promotions, subjecting Plaintiff to unwarranted scrutiny, and assigning menial tasks to Plaintiff.

99.     As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination and retaliation against Plaintiff, Plaintiff has suffered and

will continue to suffer pain, humiliation, and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

100. By engaging and condoning retaliatory conduct, Defendant discriminated against Plaintiff in violation of 42 U.S.C. § 2000e-3, as amended.

101. Defendant TELE-FLEX is an "employer" within the meaning of Title VII.

102. Plaintiff is an "employee" within the meaning of Title VII.

103. Plaintiff has performed all conditions precedent to filing this case under Title VII.

104. Defendants violated the statute by subjecting Plaintiff to retaliation.

105. The actions of Defendants have caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE**, Plaintiff seeks the following relief as to Count III of the Complaint:

A. All wages and benefits Plaintiff would have received but for the retaliation, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

B. Compensatory damages in an amount in excess of $300,000 against Defendant;

C. A permanent injunction enjoining the Defendant from engaging in the retaliatory practices complained of herein;

18

D.     A permanent injunction requiring the Defendant adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000e *et seq.*

E.     The Court retain jurisdiction of this case until such time as it is assured that the Defendant have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F.     Punitive damages as allowed by law as against Defendants;

G.     An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.     Such other relief as the Court may deem just or equitable.

## COUNT IV

### § 1981 – Retaliation

### Against All Defendants

106.     Plaintiff restates and realleges by reference paragraphs 1 through 60 as if fully set forth herein against all Defendants.

107.     Defendants intentionally subjected Plaintiff to retaliation by subjecting Plaintiff to, among other things, a hostile work environment, harassment, unwarranted criticism, discipline, denial of promotions, forcing Plaintiff to either accept a resignation or be put on a performance plan, and ultimately terminating Plaintiff's employment.

108.     These adverse actions were also based upon Defendants' failure to take effective remedial action.

109.     The conduct alleged herein constitutes a pattern, custom, and practice of retaliation against employees.

19

110.     All of Defendants' employment practices as alleged herein are undertaken with retaliatory intent.

111.     This conduct constitutes an official policy or custom of Defendant Tele-Flex, which has adversely affected Plaintiff, and violated his rights to make and enforce contracts and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationships, under 42 U.S.C. § 1981.

112.     Defendant Tele-Flex is responsible for the acts of its supervisors, including the individual Defendants named herein, who were acting within the scope of their employment and pursuant to a policy, custom, and/or pattern of race discrimination.

113.     Defendants intentionally retaliated against Plaintiff with malice or reckless indifference to Plaintiff's civil rights, thereby entitling Plaintiff to punitive damages against Defendants.

114.     The actions of the Defendants have caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE,** Plaintiff seeks the following relief as to Count IV of the Complaint:

A.     All wages and benefits Plaintiff would have received but for the discrimination, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

B.     Compensatory damages in an amount to be determined at trial;

C.     A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

D.  A permanent injunction requiring that the Defendants adopt employment practices and policies in accord and conformity with the requirements of the Civil Rights Act of 1871, 42 U.S.C. § 1981, and further requiring that Defendants adopt and initiate effective remedial actions to ensure equal treatment based on race;

E.  The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F.  Punitive damages as allowed by law as against Defendants;

G.  An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.  Such other relief as the Court may deem just or equitable.

Respectfully Submitted,

DONALD M. PITRE

*s/* **Dana L. Kurtz**

_____

*Electronically filed on March 19, 2014*

Attorneys for Plaintiff

Dana L. Kurtz, Esq. (6256245)
KURTZ LAW OFFICES, LTD.
32 Blaine Street
Hinsdale, Illinois 60521
Phone:  630.323.9444
Facsimile:  630.604.9444
E-mail: dkurtz@kurtzlaw.us

Brian J. Rayment (*pro hac vice*)
KIVELL, RAYMENT & FRANCIS, P.C.
7666 East 61st Street, Suite 550
Tulsa, Oklahoma 74145
Phone: 918.294.0047
Facsimile: 918.893.3295
E-mail: brayment@kivell.com